IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2007 JUN 25 ℗ 4: 12

PATTY CLECKLER, as the Natural Mother )
of her minor daughter, A█████L█████ )
C███████ deceased, )
)
    Plaintiff, )
)
v. )
)
DAIMLERCHRYSLER COMPANY LLC; )
McCULLOCH AMC/JEEP, et al., )
)
    Defendants. )

CIVIL ACTION NO. 2:07 CV578 -MEF

## NOTICE OF REMOVAL

    Petitioner DaimlerChrysler Company LLC ("DCC LLC"), formerly DaimlerChrysler Corporation, Defendant in the above-styled action, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, with full reservation of any and all defenses, including but not limited to lack of personal jurisdiction and improper service and venue, files this Notice of Removal of the foregoing cause to the United States District Court for the Middle District of Alabama. As grounds which entitle it to removal, Petitioner respectfully represents the following:

### THIS NOTICE OF REMOVAL IS TIMELY AND PROPERLY FILED.

    1.    Plaintiff instituted the above-styled action in the Circuit Court of Chilton County, Alabama, against DCC LLC on or about May 1, 2007. Said case bears case number CV-07-113.

    2.    Petitioner DCC LLC was served with Plaintiff's Summons and Complaint on May 25, 2007. Petitioner hereby reserves any and all rights to assert as defenses to Plaintiff's Complaint the insufficiency of service of process or insufficiency of process and venue.

    3.    Service via certified mail to McCulloch AMC/Jeep was returned as undeliverable on June 10, 2007.

4.     This is a civil action within the meaning of the Acts of Congress relating to the removal of causes.

5.     The first receipt by any of the Defendants of the Summons or Complaint, by service or otherwise, occurred less than thirty days before the filing of this Notice of Removal. The time in which DCC LLC is required by state law or rules of court to answer or plead to the Complaint has not expired.  Accordingly, pursuant to § 1446(b), this Notice of Removal is timely filed.

**THIS COURT HAS JURISDICTION PURSUANT TO 28 U.S.C. § 1332(a)(1).**

6.     The only proper parties to this case are citizens of different states.

   a.     The Plaintiff in this case is Patty Cleckler, as the Natural Mother of her minor daughter, A████L██████C██████, deceased.  Pursuant to § 1332(c)(2), the citizenship of the legal representative of an estate is determined by the citizenship of the decedent.  Attached hereto as Exhibit A is an Alabama Uniform Traffic Accident Report listing the residence of A███ L████ C██████ the decedent, as Maplesville, Alabama at the time of her death.  Accordingly, the Plaintiff is considered a citizen of Alabama for diversity jurisdiction purposes.

   b.     Defendant DCC LLC is now and was at the time of the filing of the Plaintiff's Complaint, and all times intervening, a Delaware limited liability company with its principal place of business in Michigan.  DCC LLC is wholly owned by DaimlerChrysler Holding LLC, which is also a Delaware limited liability company with its principal place of business in Michigan.  DaimlerChrysler Holding LLC is wholly owned by DaimlerChrysler Holding Corporation, which is a Delaware corporation with its principal place of business in Michigan.  Accordingly, DCC LLC is considered a citizen of Delaware or Michigan, but not Alabama, for diversity jurisdiction purposes.

2

c.    Plaintiff has also named McCulloch AMC/Jeep, a dissolved Alabama corporation, as a defendant in this case; however, because there is no possibility that Plaintiff can prove any cause of action against McCulloch AMC/Jeep, McCulloch AMC/Jeep has been fraudulently joined and should be disregarded for determining whether diversity jurisdiction exists in this case.

i.    "When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant...." Henderson v. Wash. Nat. Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). "In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). The determination of whether the resident defendant has been fraudulently joined is made based upon the plaintiff's pleadings at the time of removal, but the court may also consider submitted affidavits, deposition transcripts, and other evidence to determine whether fraudulent joinder has occurred. See id.

ii.    Attached as Exhibit B is a fax copy from the Alabama Secretary of State's office of the certified Articles of Dissolution of McCulloch AMC Jeep Renault, Inc., which is the proper name of the defendant identified in the Complaint as "McCulloch AMC/Jeep." McCulloch AMC Jeep Renault, Inc. ("McCulloch") was certified as dissolved by the Judge of Probate of Morgan County, Alabama, on September 28, 1990. (Exh. B.)

iii.    At the time of McCulloch's dissolution, the former Alabama Business Corporation Act, Ala. Code §§ 10-2A-1 et seq., was in effect. It provided that "[u]pon

3

the issuance of such certificate of dissolution, the existence of the corporation shall cease, except

for the purpose of suits, other proceedings and appropriate corporate action by shareholders,

directors and officers **as provided in this chapter.**" Ala..Code § 10-2A-191(d) (emphasis

added). A copy of Ala. Code § 10-2A-191 is attached hereto as Exhibit C. The only provision

that the former law made for suits was in § 10-2A-203, which set a two-year period for the

survival of remedies against a dissolved corporation for a right or claim that existed prior to

dissolution:

> The dissolution of a corporation either (1) by the issuance of a
> certificate of dissolution by a probate judge; or (2) by a decree of
> court when the court has not liquidated the assets and business of
> the corporation as provided in this chapter, or (3) by expiration of
> its period of duration, shall not take away or impair any remedy
> available to or against such corporation, its directors, officers or
> shareholders, for any right or claim existing, or any liability
> incurred, prior to such dissolution **if action or other proceeding
> thereon is commenced within two years after the date of
> dissolution. . . .** The shareholders, directors and officers shall have
> power to take such corporate or other action as shall be appropriate
> to protect such remedy, right or claim.

Id. § 10-2A-203 (emphasis added). A copy of Ala. Code § 10-2A-203 is attached hereto as

Exhibit D. Construing these provisions together, a dissolved corporation could only be sued on a

right or claim existing prior to its dissolution and then only if an action or proceeding on that

right or claim was commenced within two years of dissolution. The act made no provision for

suit against a dissolved corporation on a right or claim that came into existence after dissolution,

such as the one in this case.

      iv.    Although §§ 10-2A-191 and 10-2A-203 were repealed with the

passage in 1994 of the current Alabama Business Corporations Act, Ala. Code §§ 10-2B-1.01 *et

seq.*, the saving provision of the current law specifically provides that the repeal of the prior law

does not affect the operation of the statute at the time it was in force: "[T]he repeal of a statute

4

by the act adding this chapter does not affect: (1) The operation of the statute or any action taken under it before its repeal." Ala. Code § 10-2B-17.03(1). Therefore, the application of §§ 10-2A-191 and 10-2A-203, which were in effect at the time of McCulloch's dissolution, is unaffected by the subsequent repeal of those provisions.

        v.     The standard for fraudulent joinder is met in this case because there is no possibility that Plaintiff can prove any cause of action against the only resident defendant, McCulloch. Pursuant to §§ 10-2A-191 and 10-2A-203, any action against McCulloch on a claim arising after McCulloch's dissolution on September 28, 1990 is barred. See Ala. Code §§ 10-2A-191, 10-2A-203. This suit was filed sixteen years after that date. Accordingly, Plaintiff's claims against McCulloch are barred; there is no possibility that Plaintiff can prove any cause of action against McCulloch; and this Court should ignore McCulloch, the only non-diverse defendant in this case, for purposes of determining whether diversity jurisdiction exists in this case.

      7.     The $75,000 amount in controversy requirement is met.

        a.     Plaintiff seeks punitive damages for the alleged wrongful death of her minor daughter, A██ L██ C██. (See Complaint.) Punitive damages are properly considered by the court in determining the amount in controversy if such punitive damages are recoverable under governing law. Bell v. Preferred Life Assurance Society of Montgomery, Alabama, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."); Holly Equipment Co. v. Credit Alliance Corp., 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered … unless it is apparent to a legal certainty that such cannot be

recovered." (citations omitted)). Under Alabama law, *only* punitive damages are recoverable for wrongful death. Omni Ins. Co. v. Foreman, 802 So. 2d 195, 199 (Ala. 2001) ("It is hornbook law that in Alabama, the only damages a plaintiff is allowed to recover in an action for wrongful death are punitive damages.").

      b.    Plaintiff claims $15,000,000.00 as punitive damages under the Alabama Wrongful Death Act. (See Complaint at 1-2.) In this circumstance, where "it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement," removal is proper. Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001).

8.    For the foregoing reasons, this Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

9.    A true and correct copy of all process, pleadings, and orders served upon DCC LLC, as well as papers or exhibits of every kind on file with respect to this action in the state court, are attached hereto as Exhibit E.

10.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Circuit Court of Chilton County, Alabama.

11.    All properly joined parties join and consent to this removal.

12.    Petitioner reserves the right to amend or supplement this Notice of Removal.

**WHEREFORE**, Petitioner prays that the filing of the Notice of Removal and the giving of written notice thereof to the Plaintiff and the filing of a copy of this Notice of Removal with the Clerk of the Circuit Court of Chilton County, Alabama, shall effect removal of said suit to this Court.

Attorney for
DaimlerChrysler Company, LLC

OF COUNSEL:
Michael L. Bell
mbell@lfwlaw.com
J. Chandler Bailey
cbailey@lfwlaw.com
Wesley B. Gilchrist
wgilchrist@lfwlaw.com
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203
Telephone (205) 581-0700
Facsimile (205) 581-0799

## CERTIFICATE OF SERVICE

This is to certify that on this _22nd_ day of June, 2007, a true and correct copy of the foregoing was served on the following parties by placing it in the US mail with first-class postage prepaid and addressed as follows:

William W. Smith, Esq.
Smith & Alspaugh, PC
505 N 20th St., Ste. 1100
Birmingham, AL 35203

McCulloch AMC Jeep Renault, Inc.
2606 Hwy 31 S
Decatur, AL 35601

Of Counsel

# EXHIBIT A

AST-27
REV. 1/8?

**★ FATALITY**

- JUL 2 5 2006    **ALABAMA UNIFORM TRAFFIC ACCIDENT REPORT**

DPS
Accident No.: **6515096**

Shaded Areas To Be Used By Data Processing Only    Sheet __1__ of __2__ Sheet(s)    Micro/Film No.: ___    Local Case No.: ___

| Date | Time | Day of Week | County | City | Rural |
|---|---|---|---|---|---|
| 07 20 2006 | 07 : 30 | M T W **Th** F S S | 14 | | X |
| Month Day Year | | | | | |

On Street Road or Highway: **AL 22**
At Intersection of Between (Node 1): **Co. Rd. 37**
And (Node 2): **Co. Rd. 15**

| Street or Code | Feet Miles | Node 1 or 2 |
|---|---|---|
| S022 7667 | 7581 | |

Intersection Related: 1 Node 1 ☐ 2 Node 2 ☐ **N** Not Related
Mile Post 0 6 0 . 1 0
Control Access: 1 Main Rd 2 Frontage Rd
1 Interchange 2 Entrance Ramp
4 Exit Ramp 8 Blk
Prime Contr. Unit No
Prime Contr. 99
1

First Harmful Event: **65**
Event Location: **2**
Location in Road Edges: **12** FT

**UNIT NO 1**

Driver's Full Name: (redacted)
Street Address: (redacted)    City: **Maplesville, AL**    Zip: **36750**    Telephone No: **205**

| D.O.B | Race | Sex | DL State | Driver License No. | DL Status | CDL Status | Residence Less Than 25 Miles |
|---|---|---|---|---|---|---|---|
| 02 09 1989 | W | F | AL | (redacted) | D C | N | Yes ☑ No |

Place of Employment: **Dairy Queen    Clanton, AL**    Liability Insurance Co.: **ALFA**    Social Security No: ___

Driver Conditions: 0 = No Defect, 1 = Fatigued, 4 = Ill, 8 = Apparently Asleep, 9 = Unknown
Officer's Opinions: Sobriety, Alcohol Drugs: Yes Unk
Type Test Given: 1 = Blood Test, 2 = Breath Test, 3 = Urine Test, 4 = Unable to Administer, 5 = Refused
Test Results: **N/A**

Maneuver: **01**    Road Code: **S022** N E S W - Not on Rd U - Unk    Other Contr. Circumstance: **26,27**    Prime Harm Event: **02**

| Veh Year | Make | Model | Body | V.I.N. | License Tag Number | State | Year |
|---|---|---|---|---|---|---|---|
| 1986 | JEEP | CHE | NA | 1JCWB7843GT207834 | 14C668W | AL | 2007 |

Owner's Name: **Patty Connell**    Street or R.F.D.: **Same as Driver**    City: ___    State: ___

**Speed Limit 55** MPH    **Est. Speed 55** MPH    Citation Offense Charged: **None**    Damage: 1 = Non Visible 2 = Not Disabled    Vehicle Towed Away? Yes ☑ No    Damaged to Unit: 1    Enter Point of Initial Impact: 1

Vehicle Towed By Where: **Auto Collision**    To Where: **Auto Collision's Lot    Local**

**TOTALED**

**UNIT NO (X)**

Driver's Full Name: ___    Street Address: ___    City and State: ___    Zip: ___    Telephone No: ___

| D.O.B | Race | Sex | DL State | Driver License No. | DL Status | CDL Status | Residence Less Than 25 Miles |
|---|---|---|---|---|---|---|---|
| Month Day Year | | | | | | | Yes No |

Place of Employment: ___    Liability Insurance Co.: ___    Social Security No: ___

Maneuver: ___    Travel Road Name: ___    Road Code: ___    N E S W - Not on Rd U - Unk    Other Contr. Circumstance: ___    Prime Harm Event: ___    Event Loc: ___

| Veh Year | Make | Model | Body | V.I.N. | License Tag Number | State | Year |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Owner's Name: ___    Street or R.F.D.: ___    City: ___    State: ___    ZIP: ___

**C O D E S** — Contributing Circumstances / Driver Maneuver / Pedestrian Action / Event Location code listings

**SEATING**

| Other Involved Unit | | | CODES |
|---|---|---|---|
| (Circle One) | (Circle One) | | SAFETY EQUIPMENT |

Unit 1 — 1 — 24

12 - Pedestrian
13 - Rider of Domestic Animal
14 - Occ. of Non-Motorized Vehicle
15 - Victim of Other Circumstances
Codes Not Applicable

Other Involved Safety Equipment

Unit 2 — X

12 - Pedestrian
13 - Rider of Domestic Animal
14 - Occ. of Non-Motorized Vehicle
15 - Victim of Other Circumstances
Codes Not Applicable

Other Involved Safety Equipment

01 - None Installed
33 - Not Applicable
99 - Unknown (Any Type)
Lap Belt Only
11 - Fastened
12 Not Fastened
Lap/Shoulder Harness
21 - Lap Only Used
22 - Both Used
23 - Shoulder Only Used
24 - Non Used
Motorcycle Helmet
31 - Have Used
30 - Not Used
Air Bags
41 - Deployed, Belts Used
42 - Not Deployed, Belts Used
43 - Deployed, Belts Not Used
44 - Not Deployed, Belts Not Used
Child Restraint
81 - Child Restraint Used
82 - Other Restraint Used
Pedal Cycle/Pedestrian
91 Containing Clothing
92 Non-Containing Clothing

**VICTIMS**

| Name | Address | Unit No. | Seat Pos. | Injury Type | Age | Sex | Ext. Size | First Aid By |
|---|---|---|---|---|---|---|---|---|
| A___ L___ C___ | ___ Maplesville, AL | 1 | 1 | K | 17 | F | N | N |

Taken To: Martin's Funeral Home Clanton, AL
Taken By: Coroner Randy Yeargan

☐ N/A   Name ___   Address ___
Taken To ___   Taken By ___

**CODES**

Injury Type
K - Killed
B - Bruise/Abrasion/Swelling
N - Not Marked—Has Pain/Faint
O - Not Marked—Has Pain/Faint

Ejected
N - No
F - Fully
P - Partially
T - Trapped
U - Unknown
A - Not Applicable

First Aid By
A - Ambulance Attended
D - Doctor
M - Paramedic
O - Other
P - Police
U - Unknown
N - None

**NARRATIVE AID DIAGRAM**

See Sheet 2 of 2

Officer's Opinion of What Happened:     See Sheet 2 of 2

**ROADWAY ENVIRONMENT**

For Each Roadway Environment Field, Circle One Entry for Each Involved Unit

Unit 1 — 1
Unit 2 — 2 ☒

| Contributing Road Defects | Surface Construction | Condition | Accident in Or Related To Road Construction Zone? | Material in Roadway (Contributing) | Material Source | Character |
|---|---|---|---|---|---|---|
| 97 - Not Obscured | 1 - Asphalt | 1 - Dry | | 1 - None | 1 - Not Applicable | 1 - Straight—Level |
| 4 - None | 2 - Concrete | 2 - Wet | | 2 - Rocks | 2 - Natural Environment | 2 - Straight—Down Grade |
| 1 - Shoulders Low | 3 - Brick | 3 - Icy | | 3 - Trees/Limbs | 3 - Dropped From Vehicle | 3 - Straight—Up Grade |
| 2 - Shoulders High | 4 - Unpaved | 4 - Snowy/Slushy | Yes  No | 4 - Dirt | 4 - Already In Road, But Fell From Vehicle | 4 - Straight—Hillcrest |
| 3 - Holes, Bumps, Etc. | 5 - Other | 5 - Muddy | | | 5 - Other | 5 - Curve—Level |
| 8 - Other | | 6 - Other | | 8 - Unknown | | 6 - Curve—Down Grade |
| | | | | | | 7 - Curve—Up Grade |
| | | | | | | 8 - Curve—Hillcrest |

Vision Obscured By:
97 - Not Obscured
1 - Buildings
2 - Signboards
3 - Trees, Crops, Bushes
4 - Blowing Snow/Sand
5 - Hillcrest
6 - Curve In Road
7 - Fog
9 - Moving Vehicle(s)
10 - Blinded by Sunlight
11 - Fire/Smoke
12 - Dust
13 - Blinded by Headlights
14 - Embankment
15 - Rain on Windshield
16 - Snow on Windshield
98 - Other
99 - Unknown

Traffic Control
1 - Police Officer
2 - R.R. Crossing Gates
3 - R.R. Flashing Lights
4 - R.R. Cross Bucks/Pave Mark
5 - Pedestrian Control
6 - Traffic Signal
7 - Flashing Beacon
8 - Stop Sign
9 - Yield Sign
10 - Lane Control Device
11 - Flagger
12 - No Passing Zone
97 - None
98 - Other

Traffic Control Functioning:  Yes  No  N/A
DOT Railroad Crossing No. ___   N/A

Opposing Lanes Separated By:
97 - None
1 - Paved Surface
2 - Unpaved Surface
3 - Broken Painted Line
4 - Solid Painted Line
5 - Concrete Barrier
6 - Metal Guard Rail
7 - Fence
8 - Other Barrier

Trafficway Lanes
1 - One Lane
2 - Two Lanes
3 - Three Lanes
4 - Four Lanes
5 - Five Lanes
6 - Six Lanes or More

One-Way Street
Yes  No

**INVESTIGATION**

Light
1 - Daylight
2 - Dawn
3 - Dusk
4 - Darkness—Road Lit Lit
5 - Darkness—Road Not Lit

Weather
1 - Clear
2 - Cloudy
3 - Rain
4 - Snow
5 - Sleet/Hail
6 - Crosswind
7 - Fog
8 - Other

Locale
1 - Open Country
2 - Residential
3 - Shop'g or Business
4 - Mfg. or Industrial
5 - School
6 - Playground
8 - Other

Non-Vehicular Property Damage
1 - None Visible
2 - Light
3 - Moderate
4 - Severe

Property Damage Description
Description: Telephone Cable

Time Police Notified: 08:05 AM  Time Police Arrived: 08:43 AM  Time EMS Arrived: NA

Name of Photographer: W. M. Dailey

Owner: Bell South   Address: Birmingham, AL

| Witness Full Name | Address | Telephone |
|---|---|---|
| N/A | | |

| Witness Full Name | Address | Telephone |
|---|---|---|
| N/A | | |

Name of Investigating Officer: W. M. Dailey   Officer ID: 1017   Agency ORI: AST0300   Supervisor Reviewed: 7-21-06

Name of Other Investigating Officers at Scene: J. C. McKitt   Officer ID: 580   Agency ORI: AST0300

The data on this report reflects our best knowledge, opinions and beliefs covering the accidents but no warrant is made as to the factual accuracy thereof.

Signature of Investigating Officer: Wayne M. Dailey   Date: 07/20/2006

# ALABAMA
## UNIFORM TRAFFIC ACCIDENT REPORT

LOCAL CASE NO. 6515096

| | SHEET | 2 | OF | 2 | SHEET(S) |
|---|---|---|---|---|---|

AST No. 34 Rev. 4/86

### SUPPLEMENTAL SHEET

| | Unit No. | Seat Pos. | Injury Type | Age | Sex | Ejection | First Aid By |
|---|---|---|---|---|---|---|---|

**ADDITIONAL ACCIDENT VICTIMS**

| 3 | Name N/A | Address | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Taken to | Taken by | | | | | | |
| 4 | Name | Address | | | | | | |
| | Taken to | Taken by | | | | | | |
| 5 | Name | Address | | | | | | |
| | Taken to | Taken by | | | | | | |
| 6 | Name | Address | | | | | | |
| | Taken to | Taken by | | | | | | |
| 7 | Name | Address | | | | | | |
| | Taken to | Taken by | | | | | | |
| 8 | Name | Address | | | | | | |
| | Taken to | Taken by | | | | | | |
| 9 | Name | Address | | | | | | |
| | Taken to | Taken by | | | | | | |
| 10 | Name | Address | | | | | | |
| | Taken to | Taken by | | | | | | |
| 11 | Name | Address | | | | | | |
| | Taken to | Taken by | | | | | | |
| 12 | Name | Address | | | | | | |
| | Taken to | Taken by | | | | | | |

### DESCRIBE WHAT HAPPENED (Refer to vehicles by number)

**ADDITIONAL NARRATIVE SPACE**

V1 was traveling east on AL 22. V1 left the road to the right for an unknown reason. V1 reentered the road traveling across the centerline. V1 swerved back across the road, left the road, struck a concrete culvert head wall, traveled airborne across a small stream, and struck the embankment. V1's momentum caused it to overturn onto the embankment in a position resting on the front bumper (Standing on the front end). V1 caught fire and totally burned. Other property damage: Moderate, Wire Fence, Mike Wargo, 17405 AL 22 Clanton AL 35045; Light, Concrete Culvert Headwall, ALDOT, 1409 Coliseum Blvd Montgomery, AL 36130.

Final Rest V1 Standing ON Radiator and Totally Burned

Wire Fence

Rear End/Differential

←POI Embankment

←POI Culvert Headwall

◁–N

AL 22
RW 23'

| Diagram Not to Scale | = | (20 feet) | Location | Time | A.M. P.M. MT. |
| Diagram Scale 1 inch | | (10 feet) | Chilton County | 7:30 | |

| Signature of Reporting Officer(s) | Officer ID | Reporting Police Agency ORI | DATE | | |
| Wayne M. Darby | 1017 | AST 0300 | Month 07 | Day 20 | Year 2006 |

# EXHIBIT B

**Beth Chapman**
Secretary of State

P.O. Box 5616
Montgomery, AL 36103-5616

# STATE OF ALABAMA

**I, Beth Chapman, Secretary of State of the State of Alabama, having custody of the Great and Principal Seal of said State, do hereby certify that**

as appears on file and of record in this office, the pages

hereto attached, contain a true, accurate and literal copy

of articles of  dissolution of McCulloch AMC Jeep Renault,

Inc., as received and filed in the Office of the Secretary

of State of Alabama  on  October 1, 1990, showing the date

of  dissolution as  September 28, 1990, the  date  said

instrument was filed in the office of the Judge of Probate

of Morgan County.



**In Testimony Whereof, I have hereunto set my hand and affixed the Great Seal of the State, at the Capitol, in the City of Montgomery, on this day.**

06/22/07

**Date** _Beth Chapman_

**Beth Chapman**                                    **Secretary of State**

BOOK 42 PAGE 479

STATE OF ALABAMA

COUNTY OF MORGAN    *108491*



RECEIVED

OCT - 1 1990

SECRETARY
OF STATE

STATEMENT OF INTENT TO DISSOLVE
McCULLOCH AMC JEEP RENAULT, INC.
BY WRITTEN CONSENT OF SHAREHOLDERS

To the Judge of Probate of Morgan County, Alabama:

Pursuant to the provisions of Section 10-2A-181 of the Code of Alabama (1975), the undersigned corporation submits the following statement of intent to dissolve McCulloch AMC Jeep Renault, Inc., a corporation, upon written consent of its shareholders:

FIRST: The name of the corporation is McCulloch AMC Jeep Renault, Inc.

SECOND: The names and addresses of its officers are:

| NAME | OFFICE | ADDRESS |
|------|--------|---------|
| Lee F. McCulloch | President | 1310 Cloverdale, S.W. Decatur, Alabama 35601 |
| Stanley T. McCulloch | Secretary | 2321 Anderson Drive, S.W. Decatur, Alabama 35603 |

THIRD: The name and address of its directors are:

| NAME | ADDRESS |
|------|---------|
| Lee F. McCulloch | 1310 Cloverdale, S.W. Decatur, Alabama 35601 |
| Stanley T. McCulloch | 2321 Anderson Drive, S.W. Decatur, Alabama 35603 |

FOURTH: The following written consent to dissolution, which is attached hereto and marked Exhibit "A" and is incorporated herein by reference, has been signed by the sole shareholder of the corporation.

DATED this the 27th day of September, 1990.

McCULLOCH AMC JEEP RENAULT, INC.
a corporation,

BY: _____
     Its President

BY: _____
     Its Secretary

BOOK  42 PAGE 480

STATE OF ALABAMA
COUNTY OF MORGAN

Before me, the undersigned authority, a Notary Public, personally appeared Stanley T. McCulloch, who being by me first duly sworn, declared that he is the Secretary of McCulloch AMC Jeep Renault, Inc., a corporation, that he signs the foregoing document as Secretary of the corporation, and that the statements therein contained are true.

AFFIANT

Sworn to and subscribed to before me this 27th day of September, 1990.

NOTARY PUBLIC

STATE OF ALABAMA
COUNTY OF MORGAN

Before me, the undersigned authority, a Notary Public, personally appeared Lee F. McCulloch, who being by me first duly sworn, declared that he is the President of McCulloch AMC Jeep Renault, Inc., a corporation, that he signs the foregoing document as President of the corporation, and that the statements therein contained are true.

AFFIANT

Sworn to and subscribed to before me this 27th day of September, 1990.

NOTARY PUBLIC

cor8

BOOK 42 PAGE 481

EXHIBIT "A"

STATE OF ALABAMA

COUNTY OF MORGAN

### UNANIMOUS CONSENT BY SHAREHOLDER
### TO McCULLOCH AMC JEEP RENAULT, INC.

The undersigned, Lee F. McCulloch, being the owner and holder of all the outstanding capital stock of McCulloch AMC Jeep Renault, Inc., a corporation, which said corporation was organized in the County of Morgan, State of Alabama, under the laws of the State of Alabama, and with its principal place of business in Morgan County, Alabama, desiring to dissolve said corporation, does hereby agree that the said corporation shall be and it is hereby dissolved.

In witness whereof, I have hereunto set my hand and seal on this the 27th day of September, 1990.

LEE F. McCULLOCH

STATE OF ALABAMA

COUNTY OF MORGAN

I, Stanley T. McCulloch, Secretary of McCulloch AMC Jeep Renault, Inc., a corporation, do hereby certify that Lee F. McCulloch, whose name is signed to the foregoing Consent to Dissolution, constitute the sole stockholder of said corporation.

SECRETARY

Sworn to and subscribed before me this 27th day of September 1990.

NOTARY PUBLIC

I, BOBBY DAY, JUDGE OF PROBATE, HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE RECORD OF A CERTAIN _Instrument_ AS THE SAME APPEARS OF RECORD IN THIS OFFICE, THIS _Sept 27,_ 19 _90_

Judge of Probate, Morgan County, AL

1990 SEP 27 PM 3: 54

STATE OF ALA. MORGAN CO.

*10849*

BOOK 42 PAGE 489

STATE OF ALABAMA

COUNTY OF MORGAN

### ARTICLES OF DISSOLUTION OF
### McCULLOCH AMC JEEP RENAULT, INC.

Pursuant to the provision of Section 10-2A-190 of the Code of Alabama (1975), the undersigned corporation adopts the following Articles of Dissolution for the purpose of dissolving the corporation:

FIRST:  The name of the corporation is McCulloch AMC Jeep Renault, Inc.

SECOND:  A statement of intent to dissolve the corporation was filed with the Probate Judge of Morgan County, Alabama on September 27, 1990, pursuant to the provisions of Section 10-2A-183 of the Code of Alabama (1975).

THIRD:  All debts, obligations and liabilities of the corporation have been paid and discharged, or adequate provision has been made therefore.

FOURTH:  All remaining property and assets of the corporation have been distributed among its shareholders, in accordance with their respective rights and interest.

FIFTH:  There are no suits pending against the corporation in any court in respect of which adequate provision has not been made for the satisfaction of any judgment, order or decree which may be entered against it.

DATED this the 28th day of September, 1990.

McCULLOCH AMC JEEP RENAULT, INC.
a corporation

BY: _____
        Its President

BY: _____
        Its Secretary

RECEIVED

OCT - 1 1990

SECRETARY
STATE OF ALABAMA STATE

COUNTY OF MORGAN

Before me, the undersigned, a Notary Public, this day personally appeared Lee F. McCulloch, who being by me first duly sworn, declares that he is the President of McCulloch AMC Jeep Renault, Inc., that he signs the foregoing document as President of the corporation, and that the statements therein contained are true.

_____
AFFIANT

Sworn to and subscribed to before me this 28th day of September, 1990.

_____
NOTARY PUBLIC

BOOK 42 PAGE 500

STATE OF ALABAMA

COUNTY OF MORGAN

Before me, the undersigned, a Notary Public, this day personally appeared Stanley T. McCulloch who being by me first duly sworn, declares that he is the Secretary of McCulloch AMC Jeep Renault, Inc., that he signs the foregoing document as Secretary of the corporation, and that the statements therein contained are true.

AFFIANT

Sworn to and subscribed to before me this 28th day of September, 1990.

NOTARY PUBLIC

cor8

Morgan_____ COUNTY, ALABAMA    BOOK 42 PAGE 501

CERTIFICATION OF DISSOLUTION
OF

McCulloch AMC  Jeep Renault, Inc._____

The undersigned, as Judge of Probate of Morgan_____ County,

Alabama, hereby certifies that Articles of Dissolution of

_____ Same as above _____

duly signed and verified pursuant to the provisions of

Section 10-2A-191 of the Alabama Business Corporation Act

have been received in this office and are found to conform

to law.

Accordingly the undersigned, as such Judge of Probate,

and by virtue of the authority vested in him by law, hereby

issues this Certificate of Dissolution of_____

____ Same as Above _____, and attaches

hereto a certified copy of the Articles of Dissolution.

Dated this the ___28___ day of September___,1990

_____
JUDGE OF PROBATE

**I, BOBBY DAY, JUDGE OF PROBATE, HEREBY
CERTIFY THAT THE FOREGOING IS A TRUE AND
CORRECT COPY OF THE RECORD OF A
CERTAIN *Instrument* AS THE SAME
APPEARS OF RECORD IN THIS OFFICE, THIS
*Sept 28,* 19 90**

_____
Judge of Probate, Morgan County, AL



# EXHIBIT C

Westlaw.

AL ST § 10-2A-191                                                    Page 1
  Code 1975 § 10-2A-191


                        CODE OF ALABAMA 1975

        Copyright © 1977-1990 by State of Alabama.  All rights reserved.

            TITLE 10. CORPORATIONS, PARTNERSHIPS AND ASSOCIATIONS.
                    CHAPTER 2A. BUSINESS CORPORATIONS.
                      ARTICLE 7. DISSOLUTION.

§ 10-2A-191. Filing of articles of dissolution.

  (a) The articles of dissolution and two copies thereof shall be delivered to the
probate judge. If the probate judge finds that such articles of dissolution conform
to law, he shall, when all fees prescribed in this chapter have been paid:

  (1) Endorse on the articles of dissolution and on each of such copies the word
"Filed," and the hour, day, month and year of the filing thereof.

  (2) File the articles of dissolution in his office and certify two copies
thereof.

  (3) Issue a certificate of dissolution to which he shall affix a certified copy
of the articles of dissolution, and return such certificate of dissolution with the
certified copy of the articles of dissolution affixed thereto to the representative
of the dissolved corporation.

  (4) Within 10 days after the issuance of a certificate of dissolution, transmit
to the secretary of state a certified copy of the articles of dissolution,
indicating thereon the place, date and time of filing of such statement.

  (b) Upon the issuance of such certificate of dissolution, the existence of the
corporation shall cease, except for the purpose of suits, other proceedings and
appropriate corporate action by shareholders, directors and officers as provided in
this chapter.

  (Acts 1980, No. 80-633, p. 1094, § 104; Acts 1988, 1st Ex. Sess., No. 88-899, p.
459, § 1.)

                    NOTES, REFERENCES, AND ANNOTATIONS

  The 1988, 1st Sp. Sess., amendment,   effective September 30, 1988, in subsection
(a), substituted "two copies" for "a copy" in the first sentence and added "when
all fees prescribed in this chapter have been paid" at the end of the paragraph;
substituted "each of such copies" for "the copy" in subdivision (a)(1); substituted
"two copies" for "the copy" in subdivision (a)(2); and added subdivision (a)(4).


                            Commentary

  This section is basically similar to Model Act section 93, differing only in
procedural changes concerning filing. Corporate existence ceases upon the issuance
of the certificate by the probate judge. Thus, corporate officials are provided
with a specific point in time at which it can be ascertained that corporate
existence has ceased. It should be noted that certain basic remedies by and against
the corporation survive pursuant to section 10-2A-203.


      © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

AL ST § 10-2A-191

Code 1975 § 10-2A-191


   Derivation of section. -- This section is derived from section 93 of the ABA
Model Business Corporation Act.

Code 1975 § 10-2A-191

AL ST § 10-2A-191

END OF DOCUMENT

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D



CODE OF ALABAMA 1975
TITLE 10. CORPORATIONS, PARTNERSHIPS AND ASSOCIATIONS.
CHAPTER 2A. BUSINESS CORPORATIONS.
ARTICLE 7. DISSOLUTION.

Copyright © 1977-1993 by State of Alabama.  All rights reserved.

§ 10-2A-203  Survival of remedy after dissolution.

   The dissolution of a corporation either (1) by the issuance of a certificate of
dissolution by the probate judge, or (2) by a decree of court when the court has
not liquidated the assets and business of the corporation as provided in this
chapter, or (3) by expiration of its period of duration, shall not take away or
impair any remedy available to or against such corporation, its directors,
officers, or shareholders, for any right or claim existing, or any liability
incurred, prior to such dissolution if action or other proceeding thereon is
commenced within two years after the date of such dissolution. Any such action or
proceeding by or against the corporation may be prosecuted or defended by the
corporation in its corporate name. The shareholders, directors and officers shall
have power to take such corporate or other action as shall be appropriate to
protect such remedy, right or claim. If such corporation was dissolved by the
expiration of its period of duration, such corporation may amend its articles of
incorporation at any time during such period of two years so as to extend its
period of duration.

(Acts 1980, No. 80-633, p. 1094, § 116.)

NOTES, REFERENCES, AND ANNOTATIONS

Commentary

   This section is identical to Model Act section 105 and makes several changes in
the Alabama practice previously codified in former Alabama Code section 10-2-212.
The time for bringing the action is reduced from five years to two years. This
reduction is justifiable because the statute provides for the filing of a statement
of intent, the giving of notice, and court proceedings to test the status of the
corporation. Former Alabama law authorized a one step dissolution process, and the
winding up of corporate affairs took place after a single judicial proceeding.

   Derivation of section. -- This section is derived from section 105 of the ABA
Model Business Corporation Act and former section 10-2-212 of the Code of Alabama.

   Function of statute.   -- The Alabama survival statute does not act as a statute
of limitations, but rather, acts as a limitation on the capacity of the corporation
to sue or to be sued. Park Ctr. v. Champion Int'l Corp., 804 F. Supp. 294 (S.D.
Ala. 1992).

I. General Consideration.
II. Decisions Under Prior Law.
 A. Decisions Under Code 1923, § 7069.
 B. Decisions Under Code 1940, T. 10, § 110.
 C. Decisions Under Code 1940, T. 10, § 21(86).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

AL ST § 10-2A-203
  Code 1975, § **10-2A-203**

## I. General Consideration.

**Purpose of statute.** -- The survival statute is intended to provide a two-year period in which to wind-up definitively any corporate affairs, while retaining the equitable rule that fixed corporate assets pass to former shareholders following the wind-up period. Park Ctr. v. Champion Int'l Corp., 804 F. Supp. 294 (S.D. Ala. 1992).

**Summary judgment held proper.** -- The court did not err in granting summary judgment to corporation that was officially dissolved in 1964, since it could not be a party to a lawsuit brought in 1982. Turner v. Wean United, Inc., 531 So. 2d 827 (Ala. 1988).

**Contract claims must be asserted within the wind-up period** (or be properly assigned) to survive dissolution. Hutson v. Fulgham Indus., Inc., 869 F.2d 1457 (11th Cir. 1989).

**Shareholder's action to recover assets may be maintained past wind-up.** -- This statute does not supplant the common law rule of equity that shareholders succeed to certain classes of a dissolved corporation's assets. Those shareholders may maintain an action to recover such assets beyond the statutory wind-up period. Park Ctr. v. Champion Int'l Corp., 804 F. Supp. 294 (S.D. Ala. 1992).

**Failure to promptly assert claims.** -- Corporate officers, directors and principal shareholders had two years in which to initiate proceedings to protect dissolved company's remedies, rights or claims under the contract with another company, and their failure to promptly assert such claims or to properly effectuate an assignment pursuant to their dissolution agreement rendered such claims nugatory. Hutson v. Fulgham Indus., Inc., 869 F.2d 1457 (11th Cir. 1989).

**The principle of fraudulent concealment has no application** to a corporate survival statute. Park Ctr. v. Champion Int'l Corp., 804 F. Supp. 294 (S.D. Ala. 1992).

**Summary judgment held proper.** -- The court did not err in granting summary judgment to corporation that was officially dissolved in 1964, since it could not be a party to a lawsuit brought in 1982. Turner v. Wean United, Inc., 531 So. 2d 827 (Ala. 1988).

**Cited in** Arkel Land Co. v. Cagle, 445 So. 2d 858 (Ala. 1983); Polytec, Inc. v. Utah Foam Prods., Inc., 540 So. 2d 700 (Ala. 1988).

**Collateral References.** -- 19 C.J.S., Corporations, § § 1742-1780.

19 Am. Jur. 2d, Corporations, § § 1669-1675.

Power of corporation after expiration or forfeiture of its charter. 47 ALR 1288, 97 ALR 477.

Rule that in general inhibits domestic corporation which has forfeited its charter from maintaining action, as applicable to action at law to vindicate its property rights against tort-feasor. 136 ALR 1160.

Effect upon lease of dissolution of corporate lessee, the rights and liabilities incident thereto. 147 ALR 360.

Estoppel of one selling or conveying property to dissolved or defunct corporation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to deny its existence. 20 ALR2d 1084.

Maintainability of criminal proceedings against dissolved corporation. 40 ALR2d 1396.

Dissolved corporation's power to participate in arbitration proceedings. 71 ALR2d 1121.

Service of process upon dissolved domestic corporation in absence of express statutory direction. 75 ALR2d 1399.

## II. Decisions Under Prior Law.

### A. Decisions Under Code 1923, § 7069.

Section is to allow corporation to wind up its affairs.   -- The purpose of this section was to preserve the life of the corporation for certain purposes, among others, that it might prosecute and defend pending suits and wind up its business. Pearce v. Brilliant Coal Co.,  200 Ala. 630, 77 So. 4 (1917); 48th St. Inv. Co. v. Fairfield-American Nat'l Bank,  223 Ala. 44, 134 So. 803 (1931); Witt Shoe Co. v. Mills,  224 Ala. 500, 140 So. 578 (1932); Goodwyn v. Union Springs Guano Co.,  228 Ala. 173, 153 So. 246 (1934).

And to prevent abatement of pending actions.   -- It has also been ruled that the effect of this statute is to prevent abatement of pending actions and to allow the absorbing corporation, at its election, to be substituted by amendment and prosecute the actions in its name. Gulf Elec. Co. v. Fried,  220 Ala. 464, 125 So. 804 (1930); Goodwyn v. Union Springs Guano Co.,  228 Ala. 173, 153 So. 246 (1934).

But corporation cannot continue its business.   -- This section does not continue existence for the purpose of continuing business. 48th St. Inv. Co. v. Fairfield-American Nat'l Bank,  223 Ala. 44, 134 So. 803 (1931).

Two classes of corporations included.   -- This section providing for continuation of life of corporation after dissolution for purpose of disposing of property includes those corporations whose charters expire by limitation and those dissolved by forfeiture or other cause, and corporations whose charters expire by limitation need not also be dissolved by forfeiture. Thompson v. Park Sav. Bank, 96 F.2d 544 (D.C. Cir. 1938).

Trust fund is created of corporate assets upon dissolution.   -- Failure of stockholders of bank chartered in Alabama to renew charter dissolved corporation and created out of its assets a trust fund in hands of directors for benefit of its then stockholders and creditors. Thompson v. Park Sav. Bank, 96 F.2d 544 (D.C. Cir. 1938).

And directors are personally liable for breach of duty.   -- A dissolved corporation's directors cannot escape their statutory duty as trustees to settle corporation's affairs, collect debts owing it, sell and convey its property, and divide money and property thereof among stockholders after paying its debts, without incurring personal liability. Cohen v. Pavlik,  235 Ala. 289, 178 So. 435 (1938).

Liability not escaped by claiming waiver or ratification.   -- Where bank's Alabama charter was not renewed at time of expiration of prior charter, directors could not, by claiming either waiver or ratification, escape their liability as trustees to depositors who, at time of failure to renew charter, had funds on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

deposit in bank which subsequently became insolvent, and who had no actual
knowledge of expiration of charter or of their legal rights. Thompson v. Park Sav.
Bank, 96 F.2d 544 (D.C. Cir. 1938).

   Liability does not extend to subsequent creditors.   -- Persons becoming
depositors in state bank after expiration of period of corporate existence limited
by charter were charged with knowledge of bank's want of authority to continue with
general banking business, and therefore could not hold directors individually
liable for their deposits under this section. Thompson v. Park Sav. Bank, 77 F.2d
955 (D.C. Cir. 1938).

   Section not applicable to merged or consolidated corporations.   -- This section
has no application to corporations consolidated to form a new corporation; it does
not compel a creditor whose action against a corporation is pending when the
corporation is consolidated with others to pursue his action to judgment, execution
and satisfaction of his claim or demand within a certain time from the date of the
consolidation, under penalty of losing the entire claim or demand or the right to
enforce it. Pearce v. Brilliant Coal Co., 200 Ala. 630, 77 So. 4 (1917).

   Former secretary-manager of corporation could not withhold corporation's books
and records on ground that he could be made to deliver them only to his successor
in office who had not been appointed. Rayburn v. Guntersville Realty Co., 228 Ala.
662, 154 So. 812 (1934).

   Redetermination of deficiency.   -- Petitioner, subject to tax deficiency
assessment, was competent to petition for a redetermination of the deficiency
assessed against it under this section. Marine Transp. Co. v. Commissioner, 77
F.2d 177 (5th Cir. 1935).

   Assumption of like provisions in sister state.   -- Since this section makes
provision for continued existence of corporation after dissolution, the court can
reasonably assume like provisions existed in sister state. Witt Shoe Co. v. Mills,
224 Ala. 500, 140 So. 578 (1932).

                B. Decisions Under Code 1940, T. 10, § 110.

   The legal effect of this section   -- manifestly so intended by the lawmakers --
is to constitute the property and rights of a corporation dissolved otherwise than
by judicial order a trust fund, with the directors as trustees, to effect the
righteous purposes set down in the statute. One of these is to pay the obligations
incurred, assumed or imposed during the active life of the corporation. Pankey v.
Lippman, 187 Ala. 199, 65 So. 771 (1914); Rochell v. Oates, 241 Ala. 372, 2 So.
2d 749 (1941); Boothton Coal Mining Co. v. Tennessee Coal, Iron & R.R., 257 Ala.
705, 60 So. 2d 833 (1952).

   Corporation continues to exist and directors vested as trustees.   -- A
corporation, dissolved otherwise than by judicial order, continues to exist as body
corporate during statutory period for purposes named in statutes, and directors
thereof are vested with title in corporate properties as trustees with designated
powers. In re Welch's Estate, 243 Ala. 337, 10 So. 2d 5 (1942).

   After dissolution of a corporation under this section the directors are trustees
with designated powers for five years. Southeastern Constr. Co. v. Robbins, 248
Ala. 367, 27 So. 2d 705 (1946).

   And corporation is liable if director's negligence causes tort.   -- If in
settling its business, disposing of its property and dividing its capital stock,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

AL ST § 10-2A-203                                                    Page 5
 Code 1975, § **10-2A-203**

the directors so acting negligently cause an actionable tort to arise in favor of
some third person, the corporation as thus continued should be held to be liable
within the contemplation of this section. 248 Ala. 367, 27 So. 2d 705 (1946).

   But not for wrong done while continuing to prosecute business.   -- If, contrary
to the terms of this section, the corporation, acting by its directors, continues
to prosecute its business as if there had been no dissolution, though acting in its
corporate name, it would not be within the contemplation of this section, for its
corporate existence is not continued for that purpose, and therefore a wrong done
while so unlawfully acting would not create a corporate liability but it would be a
personal liability against the persons so conducting its operations. Southeastern
Constr. Co. v. Robbins,  248 Ala. 367, 27 So. 2d 705 (1946).

   Directors must conserve properties and assets for benefit of trust.   -- A
dissolved corporation's directors must conserve and preserve corporation's
properties and assets for benefit of trust imposed on them by this section. They
must exercise reasonable care and prudence exacted of trustees ordinarily in
performance of their duties as statutory trustees for settlement of corporation's
affairs. Cohen v. Pavlik,  235 Ala. 289, 178 So. 435 (1938); Universal C.I.T.
Credit Corp. v. Phenix-Girard Bank,  254 Ala. 643, 49 So. 2d 273 (1950).

   And are jointly and severally liable.   -- Directors of dissolved corporation
were "trustees" of the corporation and were severally and jointly liable to
creditors and stockholders and might be sued jointly or severally upon an account
as such trustees to all of the stockholders. Rochell v. Oates, 241 Ala. 372, 2 So.
2d 749 (1941).

   How process served upon dissolved corporation is not spelled out.   -- Neither
this section nor any other statute spelled out exactly how service of process is to
be had upon a dissolved corporation. Railway Fuel Co. v. Ackerman,  269 Ala. 460,
114 So. 2d 142 (1959).

   But service on director-trustee is proper.   -- In an action against a dissolved
domestic corporation service of process is properly had upon one of the directors-
trustees. Railway Fuel Co. v. Ackerman,  269 Ala. 460, 114 So. 2d 142 (1959).

   Although this section did not expressly provide that service may be had upon the
directors of a dissolved corporation, it was so intended by the legislature.
Railway Fuel Co. v. Ackerman,  269 Ala. 460, 114 So. 2d 142 (1959).

   Trustees named in trust deed occupy same status as directors.   -- Trustees,
named in building and loan association's trust deed to wind up its affairs,
occupied same status in relation to property and stockholders as association's
directors would have occupied had no trust deed been executed and dissolution had
been had by stockholders' unanimous action. In re Welch's Estate,  243 Ala. 337, 10
So. 2d 5 (1942).

   Application for renewal of a corporate charter filed within five years   after
the expiration of the time limit was effective to extend the life of the
corporation. State ex rel. Flowers v. Oden,  248 Ala. 39, 26 So. 2d 550 (1946).

   Trial court erred in admitting evidence that a corporation was dissolved   on the
day preceding the transaction culminating in the transfer and assignment of a
contract to appellant; for the corporation, although it had been dissolved,
remained legally capacitated to perform such a transaction. Universal C.I.T. Credit
Corp. v. Phenix-Girard Bank,  254 Ala. 643, 49 So. 2d 273 (1950).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Stockholders are tenants in common of corporate property.    -- While dissolution
terminating corporate existence in toto changes stockholders' property interests
and they become tenants in common of corporate property in proportion to their
stock holdings, subject to creditors' prior demands, the corporation, under this
section, still exists, save as to continuance in corporate business, and
stockholder's relation to corporate property presists, but title thereto is in
trustees designated to wind up corporation's affairs and make distribution to
stockholders after payment of debts. In re Welch's Estate,  243 Ala. 337, 10 So. 2d
5 (1942).

Simple contract creditor may maintain a complaint against the directors   of a
dissolved corporation for the purpose of invoking the authority of a court to
govern or enforce the due and just administration of the trust in the assets and
property of the corporation, imposed upon the directors as trustees, to the end
that the claim of such creditor might be adjudicated and paid out of the trust
fund. Boothton Coal Mining Co. v. Tennessee Coal, Iron & R.R.,  257 Ala. 705, 60
So. 2d 833 (1952).

Enforcement of labor board order not precluded.    -- The fact that corporate
employer was dissolved prior to order of national labor relations board did not
preclude enforcement of order in view of this section. De Bardeleben v. NLRB, 135
F.2d 13 (5th Cir. 1943).

Presumption that truck was being operated for purpose not in violation of
section.    -- Where it is shown that a truck involved in a collision was owned by a
corporation, a presumption arises that it was being operated by an agent of the
corporation in the line and scope of his authority. Such presumption is extended
with respect to a truck owned by a corporation dissolved within five years prior
thereto, so as to include the further presumption that it was being operated for
some purpose not in violation of this section. Southeastern Constr. Co. v. Robbins,
248 Ala. 367, 27 So. 2d 705 (1946); Southeastern Constr. Co. v. Robbins,  32 Ala.
App. 532, 27 So. 2d 703, aff'd,  248 Ala. 367, 27 So. 2d 705 (1946).

C. Decisions Under Code 1940, T. 10, § 21(86).

This section provides for   the prolongation of corporate existence in certain
cases. Katz v. Aspinwall,  342 F. Supp. 286 (N.D. Ala. 1971), aff'd, 459 F.2d 1045
(5th Cir.), cert. denied,  409 U.S. 1000, 93 S. Ct. 316, 34 L. Ed. 2d 261 (1972).

Dissolution of a corporation works an abatement of actions then pending against
it,   and presents an insuperable impediment to the institution of new actions
against such corporation unless some statutory provision prevents the termination
of its existence. Katz v. Aspinwall,  342 F. Supp. 286 (N.D. Ala. 1971), aff'd,
459 F.2d 1045 (5th Cir.), cert. denied,  409 U.S. 1000, 93 S. Ct. 316, 34 L. Ed. 2d
261 (1972).

For all legal purposes, the dissolution is the death of the corporation   and
thereafter it is a mere nonentity. Katz v. Aspinwall,  342 F. Supp. 286 (N.D. Ala.
1971), aff'd,  459 F.2d 1045 (5th Cir.), cert. denied,  409 U.S. 1000, 93 S. Ct.
316, 34 L. Ed. 2d 261 (1972).

This section has no application to corporations dissolved by judicial decree.
Ex parte Davis,  230 Ala. 668, 162 So. 306 (1935); Katz v. Aspinwall,  342 F. Supp.
286 (N.D. Ala. 1971), aff'd,  459 F.2d 1045 (5th Cir.), cert. denied,  409 U.S.
1000, 93 S. Ct. 316, 34 L. Ed. 2d 261 (1972).

Or to foreign corporations.    -- See Ex parte Davis,  230 Ala. 668, 162 So. 306

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

AL ST § 10-2A-203                                                    Page 7
 Code 1975, § **10-2A-203**

(1935); Katz v. Aspinwall,  342 F. Supp. 286 (N.D. Ala. 1971), aff'd, 459 F.2d 1045
(5th Cir.), cert. denied,  409 U.S. 1000, 93 S. Ct. 316, 34 L. Ed. 2d 261 (1972).

   Stockholders, directors and agents of a corporation are trustees for their
creditors' benefit,  and as such may be made to discover and account in chancery.
King v. Coosa Valley Mineral Prods. Co.,  283 Ala. 197, 215 So. 2d 275 (1968).

   Stockholders as quasi trustees.  -- If property of a dissolved corporation has
come into possession of stockholders with corporate debts remaining unpaid, they
become quasi trustees of such property, and subject to the equitable right of such
creditors to subject it to their debts. This right exists so long as the property
may be traced into possession of one who is not a bona fide purchaser. Boothton
Coal Mining Co. v. Tennessee Coal, Iron & R.R., 257 Ala. 705, 60 So. 2d 833 (1952);
King v. Coosa Valley Mineral Prods. Co., 283 Ala. 197, 215 So. 2d 275 (1968).

   Capital stock of an incorporated company is a fund set apart for the payment of
its debts.  It is a substitute for the personal liability which subsists in
private copartnerships. When debts are incurred, a contract arises with the
creditors that it shall not be withdrawn or applied otherwise than upon their
demands, until such demands are satisfied. The creditors have a lien upon it. If
diverted they may follow it as far as it can be traced, and subject it to the
payment of their claims, except as against holders who have taken it bona fide for
a valuable consideration and without notice. In the absence of special statutory
provisions this trust fund can in general be reached only by appropriate
proceedings. King v. Coosa Valley Mineral Prods. Co.,  283 Ala. 197, 215 So. 2d 275
(1968).

   Presumption where dividend paid out of capital stock.  -- Where a dividend is
paid out of capital stock, the stockholders are conclusively presumed to have known
it, and are liable in an action for a repayment. They cannot claim to hold the
position of bona fide holders. King v. Coosa Valley Mineral Prods. Co.,  283 Ala.
197, 215 So. 2d 275 (1969).

   Creditor's action against shareholders.  -- When the property has been divided
among the shareholders, a judgment creditor, after the return of an execution
against the corporation unsatisfied, may maintain a creditor's complaint against a
single shareholder, or against as many shareholders as he can find within the
jurisdiction, to charge him or them to the extent of the assets thus diverted; and
it is immaterial whether he got them by fair agreement with his associates or by an
act wrongful as against them. King v. Coosa Valley Mineral Prods. Co.,  283 Ala.
197, 215 So. 2d 275 (1968).

   Principle of the preference of creditors over stockholders  is of course
applicable to all corporations, whether solvent or insolvent, and is wholly
independent of the general "trust fund" theory, now established by statute with
respect to insolvent corporations. King v. Coosa Valley Mineral Prods. Co., 283
Ala. 197, 215 So. 2d 275 (1968).

   Dissolved corporation's directors are jointly and severally liable to the
corporation's creditors and stockholders  to the extent of the corporate property
coming into the hands of the directors. Such directors must exercise the reasonable
care and prudence as that ordinarily required of trustees, in the performance of
their duties as statutory trustees, for the settlement of the affairs of the
corporation. King v. Coosa Valley Mineral Prods. Co.,  283 Ala. 197, 215 So. 2d 275
(1968).

   Corporation is subject to an action upon any liability which accrued prior to its

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

AL ST §  10-2A-203                                                    Page 8
 Code 1975, §  **10-2A-203**

dissolution,    and it can make no difference whether the  liability sued on grows
out of a contract or a tort. King v. Coosa Valley Mineral Prods. Co., 283 Ala. 197,
215 So. 2d 275 (1968).

   When no petition for continuance beyond the statutory period was filed,    any
action against dissolved nursing home corporation was abated and was properly
dismissed. Gilmore, Farris & Assocs. v. Pickens County Nursing Home, 292 Ala. 610,
298 So. 2d 604 (1974).

Code 1975 §  **10-2A-203**

AL ST §  **10-2A-203**

END OF DOCUMENT

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

IN THE CIRCUIT COURT OF CHILTON COUNTY, ALABAMA

PATTY CLECKLER, as the Natural )
Mother of her minor daughter, )
A█ L█ C█, deceased, )
)
    Plaintiff, )
)
v. )  CIVIL ACTION NO.: CV07-113-R
)
DAIMLERCHRYSLER CORPORATION, )
INC., a corporation, et. al., )
)
    Defendants.



## SUMMONS

This service by Certified Mail of this summons is initiated upon the written request of Plaintiffs' attorney pursuant to the Alabama Rules of Civil Procedure.

Notice to:    DAIMLERCHRYSLER CORPORATION, INC.
                c/o The Corporation Company
                2000 Interstate Park Drive, Ste. 204
                Montgomery, AL 36109

                McCULLOCH AMC/JEEP
                2606 Highway 31 South
                Decatur, AL 35601

The complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint, to William W. Smith, Esquire, Smith & Alspaugh, P.C., 1100 Financial Center, 505 20th Street North, Birmingham, AL 35203. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

                                    Eleen McGriff    dp
                                      CLERK OF COURT

DATED: 5-1-2007

IN THE CIRCUIT COURT OF CHILTON COUNTY, ALABAMA

PATTY CLECKLER, as the Natural )
Mother of her minor daughter, )
A█████L██████ C██████, deceased, )
                                  )
      Plaintiff, )
                                  )
v.                                )    CIVIL ACTION NO.: CV07-113-B
                                  )
DAIMLERCHRYSLER CORPORATION, )
INC., a corporation; McCULLOCH AMC/ )
JEEP; DEFENDANT "A:, that )
firm or corporation, known and designated )
as DaimlerChrysler Corporation that )
manufactured the 1986 Jeep Cherokee )
motor vehicle involved in the accident )
made the basis of this suit; DEFENDANT )
"B", that person, firm, or corporation that )
designed the fuel system in the 1986 Jeep )
Cherokee involved in the accident made the )
basis of this suit; DEFENDANT "C", that )
person, firm, or corporation that caused, )
permitted, or allowed the fuel lines in the )
1986 Jeep Cherokee involved in the accident )
made the basis of this suit to be placed in the )
"crush zone" of said vehicle prior to the date )
of the accident made the basis of this suit; )
DEFENDANT "D", that person, firm, or )
corporation that caused, or contributed to, )
the post collision fuel fed fire which caused )
the catastrophic death of the plaintiff's minor )
daughter, April Lynette Connell, on the )
occasion complained of in this complaint, all )
of whose true names are otherwise unknown )
but will be supplied by amendment when )
ascertained, )

      Defendants.

## COMPLAINT

### (General Allegations)

The Plaintiff, Patty Cleckler, as the natural mother of her minor daughter, A█████L██████

C█████, deceased, claims of the defendants, both named and fictitious, a sum of money that a struck Chilton County jury deems to be fair, reasonable and appropriate, but probably not less than Fifteen Millions Dollars ($15,000,000.00) considering the enormity of the wrong herein, as punitive damages under the Wrongful Death Act of the State of Alabama.

Said claims are made for that heretofore, to-wit, July 20, 2006, the Plaintiff's minor daughter was operating a 1986 Jeep Cherokee automobile, V.I.N. Number 1JCWB7843GT207834, on Alabama Highway 22 between County Road 37 and County Road 15 in said Chilton County, Alabama, when then and there, for some unknown reason, she was involved in a one vehicle wreck that resulted in a catastrophic post collision fuel-fed fire that caused her said minor daughter to meet her demise on said occasion.

The said vehicle, that the Plaintiff's minor daughter was operating as aforesaid, had theretofore been designed, assembled, manufactured, furnished, sold, supplied, marketed, or otherwise placed into the stream of commerce by the Defendants, both named and fictitious; and the Plaintiff's minor daughter was using said vehicle, as intended, on the occasion complained of.

Further, the Plaintiff alleges and avers that the said vehicle was defective and unreasonably dangerous in that the fuel system, and the routing of the fuel lines in said system, had theretofore been placed, by the Defendants, in the "crush zone" of said vehicle which resulted in a rupture of said fuel lines in the accident made the basis of this suit and resulting in said fire.

## COUNT ONE

### (Plaintiff's Claim for Wrongful Death)

1.    Plaintiff hereby adopts by reference and incorporates herein all the material averments set forth above as if fully set out herein.

2.    Plaintiff further avers and alleges that the Defendants, both named and fictitious, are

responsible to the Plaintiff pursuant to the *Alabama Wrongful Death Act* and the *Alabama Extended Manufacturers Liability Doctrine*, inasmuch as the defective and unreasonably dangerous condition of said vehicle proximately caused the catastrophic fire that resulted in the death of Plaintiff's minor daughter, hence this claim.

## COUNT TWO

(Plaintiff's Claim for Negligence)

3.      Plaintiff hereby adopts by reference and incorporates herein all the material averments set forth above as if fully set out herein.

4.      Plaintiff further claims that these Defendants, both named and fictitious, were guilty of <u>negligent</u> <u>conduct</u> pursuant to the *Alabama Wrongful Death Act* which combined and concurred to produce the catastrophic fire resulting in the death of the Plaintiff's minor daughter, hence this claim.

This the _____ day of _____, 2007.


_____
WILLIAM W. SMITH (SMI021)
Attorney for Plaintiff

**OF COUNSEL**:
SMITH & ALSPAUGH, P.C.
505 N. 20th Street
1100 Financial Center
Birmingham, AL 35203
Phone: (205) 324-8910


## PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY

PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AS FOLLOWS:

DAIMLERCHRYSLER CORPORATION, INC.
c/o The Corporation Company
2000 Interstate Park Drive, Ste. 204
Montgomery, AL 36109

McCULLOCH AMC/JEEP
2606 Highway 31 South
Decatur, AL 35601

IN THE CIRCUIT COURT OF CHILTON COUNTY, ALABAMA



PATTY CLECKLER, as the Natural )
Mother of her minor daughter, )
A███ L█████ C█████, deceased, )
     )
   **Plaintiff,** )
     )
v.      )  CIVIL ACTION NO.: CV07-113-R
     )
DAIMLERCHRYSLER CORPORATION, )
INC., a corporation, et. al., )
     )
   **Defendants.** )

## PLAINTIFF'S FIRST INTERROGATORIES, REQUEST FOR PRODUCTION AND REQUEST FOR ADMISSION TO DEFENDANT DAIMLERCHRYSLER CORPORATION, INC.

COMES NOW the Plaintiff, by and through counsel, and pursuant to the *Alabama Rules of Civil Procedure* hereby propounds the following discovery:

For the purpose of the following discovery the following definitions apply:

### INTERROGATORIES

(A)  "Product in Question" and "The Product" refers to the 1986 Jeep Cherokee automobile that the Plaintiff's minor daughter was operating on the occasion complained of.

(B)  The term "similar products" as used herein and these Interrogatories shall mean products other than "the product" which are essentially and substantially similar to "the product" which with regard to design specifications is concerning the fuel system on the vehicle involved in the accident made the basis of this suit.

(C)  The term "comparable products" as used hereinafter in these Interrogatories shall mean products other than "the product" or "similar products" which have likeness as to design, specifications, dimensions, or material composition with reference to the fuel system on the subject

vehicles involved in the accident made the basis of this suit.

1.    Please state your full name, address, job title, of each person answering or assisting in answering these Interrogatories on behalf of the Defendant, DaimlerChrysler Corporation.

2.    Please state whether or not this Defendant has been sued under its correct name.  If not, please state the correct name and explain your answer so that service may be properly obtained.

3.    Please state whether or not prior to answering these Interrogatories, you, or someone else, has made a due and diligent search of all books, records, e-mails and papers of the Defendant and a due and diligent inquiry of all agents and employees of this Defendant with a view toward eliciting all information available relevant to this action.

4.    Please state whether or not this Defendant owns a patent or patents on any component parts of the fuel system with reference to the vehicle involved in the accident made the basis of this suit.  If so, please attach a copy of any and all patents with reference to the said fuel system that was on the 1986 Jeep Cherokee involved in the accident giving rise to this cause of action.

5.    Please state the name and address of each and every person or entity that holds an interest in the patents referred to above.

6.    Please state whether or not this Defendant, or its agents, servants, and/or employees designed and manufactured the fuel system, including the placement of the fuel lines, with reference to the subject vehicle.

7.    If you have stated that you have designed the fuel system in the subject vehicle, please set forth a description of the specifications for the subject component part.

8.    Please state whether or not this Defendant automobile manufacturer installed the fuel system, including the placement of the fuel lines, on the subject vehicle at or prior to the date the said

2

vehicle was sold and placed in the channels of commerce. And, if so, set forth:

    (a)    The place of installation;

    (b)    The name or names of last known addresses of the persons or entities responsible for said installation; and

    (c)    A description of the specifications for the installation of the component parts.

9.    If you have stated that this Defendant designed the fuel system involved with reference to the subject vehicle, then please state the name and address of the person or persons primarily responsible for said design, and give the approximate date that the component parts were designed.

10.    Please state whether or not this Defendant did, in fact, manufacture the product in question. If so, state the date of its manufacture and the location where it was manufactured.

11.    If you have assembled this vehicle, please state whether or not this Defendant assembled the product in question. If so, please state the date it was assembled and the normal placement of the component parts involved in the fuel system which went into the assembly and if any component part was manufactured by any entity other than this Defendant, please identify such other entity as well as the outside manufactured component parts.

12.    Please state whether or not the product reached the plaintiff herein in substantially the same condition in which it was sold. If not, please describe in what way the product had been changed, altered, or modified from its original design with reference to the fuel system involved herein.

13.    Please state whether or not there have been any changes in the design of the fuel system in question since it was originally introduced into the market. If so, describe each and every

such design change and the reason for the change with reference to such design change that relates to safety of the product or use of the product as it relates to the fuel system.

14.    Please state the name and address of the person or persons, either currently or formerly employed by this Defendant, who possess the greatest amount of knowledge and skill with regard to the design of the fuel system, and the fuel lines in said system, of the product in question. If this Defendant claims that the product was altered or modified between the time it was designed, manufactured, and sold, then please describe what alterations or modifications this Defendant contends has been made with respect to the product, and the fuel system, and how any such change contributed, if any, to the catastrophic fire that occurred during the accident in question.

15.    Please state what this Defendant's contention is with reference to whether the product was being used at the time of the occurrence as it was designed to be used. If the Defendant contends that the Plaintiff was misusing the product in any way, please describe in detail how you contend it was being misused.

16.    Please state whether or not this Defendant contends that the Plaintiff failed to either comply with any instruction or warning in connection with the occurrence in question. If so, please state whether or not this Defendant contends that such failure, if any, on the part of the Plaintiff had any causal connection with the catastrophic injuries and damages the Plaintiff's minor daughter received in the fire involved herein.

17.    Please state whether or not this Defendant has ever received any notice of any accidents or injuries, involving post collision fuel fed fires, involving the product involved, or "similar products" in question. If so, please describe each and every such injury or accident of which this Defendant has been notified.

4

18.    Please state whether or not there have ever been any lawsuits filed against this Defendant claiming that the fuel system on the subject vehicle, and "similar vehicles", were defective and unreasonably dangerous. If so, please list the names and addresses of each and every claimant and give a complete description of the claim or claims in the lawsuits that have heretofore been filed.

19.    Please state whether or not is it the regular business of this Defendant to design, manufacture, and sell products such as the one involved in this case and described herein. If not, what was the regular business of the defendant with respect to this particular product?

20.    Please state the full name, address, job title and department or group of each person in the employment of this Defendant who has ultimate chief and/or supervisory responsibility for:

   (a)    The overall design of the fuel system on the product in question;

   (b)    The manufacturer of the said fuel system;

   (c)    The assembly of the said fuel system;

   (d)    The preparation of instructions or warning with reference to the said fuel system; and

   (e)    The sale of the product that included the said fuel system.

21.    Please state the name and address of each expert consultant by this Defendant whose report or work product will be relied upon, in whole or in part, by a testifying expert witness in this case.

22.    Please state the name and address of each consulting expert whose report or work product was reviewed by a testifying expert witness in this case.

23.    What is the useful life of this 1986 Jeep Cherokee?

5

24.    Please describe any tests done by this Defendant with respect to the product in question or on "similar products" sold by this Defendant in order to determine the safety of such products in the real world, foreseeable, crashes.

25.    Please state whether or not this product, and in particular this fuel system has ever been the subject of a safety recall or service bulletin by this Defendant or any other company; and if so, state the date of such recall and/or service bulletin and the reason for such recall or service bulletin.

26.    Please state whether or not this automobile was tested, approved, or certified by any independent agency or laboratory before it was sold. If so, please state the name and address of any such independent agency or laboratory.

27.    Please state the total cost to this Defendant of manufacturing the fuel system on the subject vehicle.

28.    Please state the total cost of rerouting the fuel system from the "crush zone" on the driver's outboard side to the "middle" of said vehicle between the front and rear axle and the side rails of the chassis of said vehicle.

29.    Please state whether or not there were any safety features at the time this car was manufactured, such as bladder tanks and/or non-destructible fuel lines, that could have been incorporated in the design, manufacture or assembly of the Jeep Cherokee in question that were not so incorporated. If so, please describe any such safety feature and state why it was not incorporated to the product in question.

30.    Please state whether or not this Defendant has conducted or caused to be conducted any investigation of the occurrence in question. If so, please give the date of such investigation, the

6

name and job title of the person who conducted such investigation if such investigation is not privileged by law.

31.     Does this Defendant have a procedure in place to receive, collect and maintain records of notices of accidents and/or injuries involved in post-collision fuel fed fires involving products of this type? If so, please describe the types of reports or records kept by this Defendant and the name of the person responsible for keeping such records.

32.     Please state the name and address of any and all expert witnesses retained by this Defendant that may testify at the trial of this cause.

  (a)     Please state any and all opinions and conclusions reached by expert witnesses with reference to the accident and horrible death involved herein.

  (b)     Please state the facts and circumstances, and any and all data, tests, records, or other information that support the aforesaid opinions and conclusions of said experts.

  (c)     Please state the rate of pay of all said experts.

  (d)     Please state the number of times each of said experts has been employed by the defendant for potential litigation purposes.

  (e)     Also, please state the style of each case this/these expert(s) have been employed in as well as the name and address of the attorney representing the plaintiff in said cases.

33.     Please state the names and addresses of each and every lay or fact witness you expert to testify in this trial as well as a detailed summary of their expected testimony.

34.     Please identify the factual basis of each and every affirmative defense that you assert

7

with reference to the Complaint filed by the Plaintiff herein.

## **REQUEST FOR PRODUCTION**

For the purpose of the following Request for Production, the following definitions apply:

A.    DEFINITIONS:

"Product in Questions", and "the product" refer to the 1986 Jeep Cherokee involved in the accident made the basis of this suit.

B.    LIST OF DOCUMENTS AND THINGS REQUESTED:

1.    Any and all brochures and literature printed, distributed, or circulated by the Defendant containing photographs, diagrams, or description of the product.

2.    Any and all documents or writings prepared for accompaniment with the product in question containing warnings of any dangers to which ultimate users of the product may be exposed or containing any instructions for use with reference to said product.

3.    Any and all documents, drawings, by whatever name called, including sketches, schematics, blue prints, computer printouts, with reference to the design specifications of the fuel system, and fuel lines on the product in question.

4.    Any documents, records, computer print-outs, by whatever name called, that reflect any and other similar instance involving products of the same design as the product in question.

5.    The results, in whatever form available, of any testing of this product for safety or safety inspection with reference to the fuel system integrity and safety of said system with reference to foreseeable side impacts in the real world environment.

6.    Results of any testing for product safety or safety inspection of the group of products in which the product in question was included at the time of the manufacturing or marketing of said

8

product.

7.    Copies of any and all patents held by this Defendant or any agent, servant, or employee of this Defendant  with reference to the fuel system and/or fuel lines on the vehicle involved in the accident made the basis of this suit.

8.    Copies of any and all experts' reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if said expert is expected to or may testify in this cause as an expert.

9.    Any and all expert reports that were or will be relied upon in whole or in part by any testifying expert in this case.

10.    Any and all work papers, notes, e-mails, documents, and photographs  in the file of any expert witness that is expected to testify, or in the file of any expert witness who has written a report which is or will be relied upon in whole or in part by a testifying expert.

11.    Any and all brochures, manuals, parts' list, instructions, written materials, service bulletins, communications to dealers, or other materials or documents in the possession of this defendant relating to the fuel system and/or fuel lines involved in the Jeep Cherokee involved in the accident made the basis of this suit.

12.    A copy of the Operator's Manual that would have been delivered to the original owner of said product.

13.    Curriculum Vitae together with any other documents in your possession pertaining to the credentials and qualifications of any and all experts that may be called by this Defendant in the trial of this cause.

14.    Copies of any and all documents, photographs, or other physical evidence which will

9

be used or offered in the trial of this cause.

15.     Copies of any and all trade journals or similar publications that have discussed, criticized, or analyzed the fuel system and/or fuel lines with reference to the subject vehicle.

16.     Copies of any and all treatises or authoritative literature which any expert intends to rely upon in his testimony in this case.

17.     Copies of any and all recalls, if applicable, with reference to the subject vehicle concerning its fuel system and/or fuel lines.

### REQUESTS FOR ADMISSIONS

A.      DEFINITIONS.

For purposes of the following questions, the following definitions apply:

"Product in Questions", and "the product" refer to the subject 1986 Jeep Cherokee vehicle involved in the accident made the basis of this suit.

B.      REQUEST FOR ADMISSIONS TO THIS DEFENDANT:

1.      Do you admit or deny that the Defendant designed the product in question?

2.      Do you admit or deny that the Defendant manufactured the production in question?

3.      Do you admit or deny that the Defendant assembled the product in question?

4.      Do you admit or deny that the Defendant marketed the product in question?

5.      Do you admit or deny that the Defendant placed the product in question into the stream of commerce?

6.      Do you admit or deny that the product in question reached the Plaintiff in this case in substantially the same condition in which it was sold?

7.      Do you admit or deny that it is the regular business of the Defendant to sell products

such as the product in question?

8.    Do you admit or deny that at the time of the occurrence in question the Plaintiff was using the product in a manner in which it was designed to be used?

9.    Do you admit or deny that at the time of the occurrence in question the Plaintiff was using the product in question in accordance with the instructions which were supplied with the product?

10.    Do you admit or deny that Plaintiff heeded all warnings which accompanied the product in question?

11.    Do you admit or deny that the product was not modified or materially altered from the original condition and configuration in which it was sold?

12.    Do you admit or deny that the accident made the basis of this suit occurred on July 20, 2006?

13.    Do you admit or deny that the Plaintiff's minor daughter sustained injuries from a post collision fuel-fed fire that caused her death?

14.    Do you admit or deny that the Plaintiff's minor daughter was in a foreseeable accident that the defendant knew could happen in the real world use of said vehicle?

This _____27_____ day of _____April_____, 2007.

_____

WILLIAM W. SMITH
NICOLE L. JUDGE
Attorneys for Plaintiffs

11

OF COUNSEL:
SMITH & ALSPAUGH, P.C.
1100 Financial Center
505 Twentieth Street North
Birmingham, Alabama 35203-4640
(205) 324-8910

**PLEASE SERVE WITH THE SUMMONS AND COMPLAINT**

12